No. 24-1608

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

---

ROBERT ZEIDMAN,

*Petitioner-Appellee,*

v.

LINDELL MANAGEMENT LLC,

*Respondent-Appellant.*

---

On Appeal from the United States District Court
for the District of Minnesota
Civil Case No. 0:23-cv-01433 (Honorable John R. Tunheim)

---

## BRIEF OF RESPONDENT-APPELLANT LINDELL MANAGEMENT LLC

---

Douglas G. Wardlow
1550 Audubon Road
Chaska, Minnesota 55318
(952) 826-8658
doug@lindellmanagement.com

Thomas F. Miller
Thomas F. Miller, P.A.
1000 Superior Blvd., Ste. 303
Wayzata, Minnesota 55391
(612) 991-5992
thomas@millerlaw.com

*Counsel for Respondent-Appellant Lindell Management LLC*

# SUMMARY OF THE CASE

Appellee Robert Zeidman participated in a contest run by Appellant Lindell Management concerning what Lindell Management represented to be computer files containing data related to the November 2020 election. Contestants were offered $5 million if they could prove "unequivocally" that the files did not contain information related to the election. Mr. Zeidman entered the contest, submitting a report showing that the files did not contain "packet capture" data, supposedly the likely format of data captured during internet transmission. The contest judges determined that Mr. Zeidman had not won. Mr. Zeidman initiated an arbitration. The arbitration panel determined that the contest rules were unambiguous. Even so, the panel relied on extrinsic evidence to conclude that the data could not be related to the election solely because the files did not contain packet-capture data and awarded Mr. Zeidman $5 million. The parties brought actions to confirm and vacate the award, respectively, which were consolidated. The District Court confirmed the award, holding that while the panel's reliance on evidence outside the contract was a "potentially serious legal error," the panel was attempting to interpret the contract and had not exceeded its powers. The District Court erred because the panel disregarded and modified unambiguous contract language, amending the contract to impose a new obligation on Lindell Management. As such, the essence of the award is not found in the contract.

Due to the complexities of the arguments and the significant size of the award, Appellant requests fifteen minutes per side for oral arguments.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Eighth Circuit Local Rule 26.1A, Respondent-Appellant Lindell Management LLC states that it has no parent corporation, and that no publicly held corporation owns 10 percent or more of its stock.

# TABLE OF CONTENTS

SUMMARY OF THE CASE ............................................................................... i

CORPORATE DISCLOSURE STATEMENT............................................... ii

TABLE OF AUTHORITIES ........................................................................ iv

JURISDICTIONAL STATEMENT................................................................ 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW......................... 1

STATEMENT OF THE CASE ...................................................................... 2

SUMMARY OF THE ARGUMENT.............................................................. 9

ARGUMENT................................................................................................ 12

    I.  Standard of Review................................................................................ 12

    II. The District Court's Determination That the Arbitration Panel Did Not
       Act Outside the Scope of Its Authority in Issuing the Award Constitutes
       Legal Error and Warrants Reversal....................................................... 12

        A. The Panel Exceeded Its Authority by Imposing a New Obligation on
           Lindell Management That Lacks a Basis in the Contract.............................. 14

        B. The Panel Exceeded Its Authority When It Modified the Burden of
           Proof Established by the Unambiguous Terms of the Contract ................. 19

        C. The Panel Exceeded Its Authority by Focusing the Contest on
           Election Process Data, Ignoring Unambiguous Contract Terms ................. 22

CONCLUSION ........................................................................................... 26

CERTIFICATE OF COMPLIANCE .......................................................... 27

CERTIFICATE OF SERVICE .................................................................... 28

# TABLE OF AUTHORITIES

## CASES

*CenterPoint Energy Res. Corp. v. Gas Workers Union,*
  920 F.3d 1163 (8th Cir. 2019).................................................................... 25

*District No. 72 & Local Lodge 1127, Int'l Assoc. of Mach. & Aerospace*
  *Workers v. Teter Tool & Die, Inc.,* 630 F. Supp. 732 (N.D. Ind. 1986)................. 25

*E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17,*
  531 U.S. 57 (2000)..................................................................................... 19

*First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938 (1995)................................ 12

*Hoffman v. Cargill Inc.,* 236 F.3d 458 (8th Cir. 2001)........................................... 21

*Inter-City Gas Corp. v. Boise Cascade Corp.,* 845 F.2d 184 (8th Cir. 1988)....... 12, 20, 22, 25

*Keebler Co. v. Milk Drivers & Dairy Employees Union Local No. 471,*
  80 F.3d 284 (8th Cir. 1996)................................................................... 17, 18

*Manhattan Coffee Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen*
  *& Helpers of Am., Loc. No. 688,* 743 F.2d 621 (8th Cir. 1984) ............................ 17

*Minneapolis Pub. Hous. Auth. V. Lor,* 591 N.W.2d 700 (Minn. 1999) ............................ 24

*Minnesota Vikings Football Stadium, LLC v. Wells Fargo Bank, Nat'l Ass'n,*
  193 F.Supp.3d 1002 (D. Minn 2016)................................................................... 24

*Missouri River Servs., Inc. v. Omaha Tribe of Nebraska,* 267 F.3d 848
  (8th Cir. 2001)......................................................................................... 19

*Northwest Airlines, Inc. v. International Ass'n of Machinist & Aerospace Workers,*
  *Air Transp. Dist. Lodge #143,* 894 F.2d 998 (8th Cir. 1990) ................................ 19

*Oxford Health Plans LLC v. Sutter,* 569 U.S. 564 (2013) ...................................... 18

*Paperworkers v. Misco, Inc.,* 484 U.S. 29 (1987)................................................ 19

*Stark v. Sandberg, Phoenix & von Gontard, P.C.,* 381 F.3d 793 (8th Cir. 2004)................ 12

*Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593 (1960) .................................... 12

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662 (2010) ............................. 12, 25

*Titan Wheel Corp. of Iowa v. Local 2048, Int'l Ass'n of Machinists &*
*Aerospace Workers,* 253 F.3d 1118 (8th Cir. 2001) ................................................... 12

## STATUTES

9 U.S.C. § 1 *et seq.* ................................................................................................. 12

9 U.S.C. § 10(a)(4) ........................................................................... 9, 13, 19, 20

## OTHER AUTHORITIES

"Refined," Merriam-Webster.com Dictionary, available at https://www.merriam-
webster.com/dictionary/related (last visited May 6, 2024) ................................. 24

"Reflective," Merriam-Webster.com Dictionary, available at https://www.merriam-
webster.com/dictionary/reflective (last visited May 6, 2024) ............................ 24

# JURISDICTIONAL STATEMENT

The District Court exercised jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties. This Court has jurisdiction under 28 U.S.C. § 1291 to review the District Court's February 21, 2024 Memorandum Opinion and Order Confirming Arbitration Award, Add. 1, App. 7, R. Doc. 45, and final judgment entered February 22, 2024, Add. 13, App. 19, R. Doc. 46. Appellant Lindell Management timely noticed its appeal on March 21, 2024. App. 20, R. Doc. 49.

# STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the District Court erred in finding that the arbitration panel did not modify the contract and exceed the scope of its authority when:

(a)  the panel ignored the unambiguous terms of the parties' contract and relied on sources outside the contract to impose a new obligation on Lindell Management to pay the prize money in the event a contestant demonstrated that the computer files at issue did not contain packet-capture data;

(b) the panel altered the burden of proof required to win the contest established by the unambiguous terms of the parties' contract; and

(c) the panel concluded that the contest could be won by showing that the data files at issue did not contain data from the actual election process in November 2020.

*Keebler Co. v. Milk Drivers & Dairy Employees Union Local No. 471*, 80 F.3d

    284 (8th Cir. 1996)

*Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848

    (8th Cir. 2001)

*Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184 (8th Cir. 1988)

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010)

## STATEMENT OF THE CASE

Appellant Lindell Management LLC ("Lindell Management") is owned and

operated by businessman Michael Lindell. App. 23, R. Doc. 2-2, at 3.[1]  Mr. Lindell, in

addition to operating his businesses, is widely known to be involved in activism and

litigation to promote election security. *Id.* After the 2020 general election, Mr. Lindell

came into possession of a significant amount of data, which he was advised had been

captured during voting in the election. App. 24, R. Doc. 2-2, at 4. Based on analysis of

the data performed by experts, Mr. Lindell came to believe that the data show that

China interfered with the November 2020 presidential election in several states. *Id.*

Mr. Lindell stated this belief repeatedly during appearances on news networks and on

his streaming channel, FrankSpeech. *Id.*  In order to advance public awareness of the

data and Mr. Lindell's contention that the data show that China interfered in the 2020

---

[1] Citations to the Addendum are noted as "Add." and citations to Appellant's
Appendix are noted as "App."  "R. Doc." page citations refer to ECF page numbers.

election, Lindell Management hosted a "Cyber Symposium" in Sioux Falls, South Dakota, on August 10 and 11, 2021. *Id.* Part of the Cyber Symposium was the "Prove Mike Wrong" Challenge, a contest wherein a series of computer-data files were provided to contestants, and the contestants were asked to prove that the data contained in those files were not "related to" the November 2020 election. App. 25-26, 29-30, R. Doc. 2-2, at 5-6 and 9-10; Add. 14, App. 46, R. Doc. 2-1, at 2.

The contest was governed by a set of written rules, which read, in relevant part, as follows:

> 1. Overview. . . . [P]articipants will participate in a challenge to prove that the data Lindell provides, and represents reflects information from the November 2020 election, *unequivocally does NOT reflect information related to the November 2020 election.* . . . Entries must be submitted to Lindell [Management] during the Challenge Period in strict accordance with these Official Rules.

> * * *

> 4. Agreement to Official Rules. Participation in the Contest constitutes Entrant's full and unconditional agreement to an acceptance of these Official Rules and the decisions of [Lindell Management], which are final and binding. Winning a prize is contingent upon fulfilling all requirements set forth herein.

> * * *

> 5. Contest Entry Period. . . . Participants must submit all of their evidence in writing to a three member panel selected by Lindell who will determine whether the submission *proves to a 100% degree of certainty that the data shown at the Symposium is not reflective of November 2020 election data.*

Add. 14, App. 46, R. Doc. 2-1 at 2 (emphasis added). Mr. Zeidman decided to enter

the contest, and he read, agreed to, and signed the contest rules before participating. Add. 17, App. 49, R. Doc. 2-2, at 6; App. 52, R. Doc 28-1, at 3.

In short, the contest rules provided that, in order to win, a contestant would have to (1) "prove that the data provided . . . unequivocally does not reflect information related to the November 2020 election," and (2) "prove[] to a 100% degree of certainty that the data . . . is not reflective of November 2020 election data." Add. 14-15, App. 46-47, R. Doc 2-1, at 2-3. The contract thus established an exactingly high and stringent burden of proof: contestants had to prove "unequivocally" and "to a 100% degree of certainty" that the data was not "related to" the 2020 election nor "reflective of" 2020 election data. *Id.* The prize for successfully making that difficult showing was set at $5 million. *Id.* The rules further provided that if more than one contestant were to be declared a winner, then the winning contestants would split the $5 million prize equally. *Id.*

Lindell Management provided the contestants with 11 data files. Add. 20-21, App. 29-30, R. Doc. 2-2, at 9-10. For his entry, Mr. Zeidman submitted a 15-page report alleging, in relevant part, that each of the files did not contain packet-capture data, also referred to as "PCAP" data. Add. 21, App. 30, R. Doc. 2-2, at 10. Mr. Zeidman's submission attempted to win the contest by showing that the files unequivocally did not contain PCAP data. *Id.* Mr. Zeidman reasoned that because data extracted in real-time from the internet would be expected to be packet-capture data,

if the files did not contain data in packet-capture format, then the data must not be election data captured from the internet in real time. *See* App. 36-42, R. Doc. 2-2, at 16-22. The logic of Mr. Zeidman's submission was fatally flawed, however, because packet-capture data (like any form of data) can be converted or reconstituted into a different format after its capture or creation. Indeed, as the panel observed, Mr. Zeidman himself testified that "election data could be in another form than PCAP data." Add. 25, App. 34, R. Doc. 2-2, at 14 n.2. Moreover, even accepting for the sake of argument only that the data were not election data captured from the internet, that conclusion is not probative of whether the data were "reflective of information related to" the election or "reflective of" election data—the standard set by the contest rules. Add. 14-15, App. 46-47, R. Doc 2-1, at 2-3.

The contest judges reviewed Mr. Zeidman's submission and concluded that he had not won the contest. Add. 22, App. 31, R. Doc. 2-2, at 11.

The contest rules contain an arbitration clause, which provided as follows:

> You [contestant] and Lindell [Management] agree that in the event of any claim, dispute, or controversy (whether in contract, tort, or otherwise) arising out of, relating to, or connected in any way with the challenge, or the breach, enforcement, interpretation, or validity of these terms & conditions ("claim"), such claim will be resolved exclusively by final and binding arbitration. Arbitration is more informal than a lawsuit in court and uses a neutral arbitrator instead of a judge or jury. Arbitration is subject to very limited review by courts, but arbitrators can award the same damages and relief that a court can award. The arbitration will be conducted under the then current rules of the AAA and conducted in English. … The location of any arbitration shall be Minneapolis, Minnesota.

Add. 16, App. 48, R. Doc. 2-1, at 14 ("all capitals" emphasis removed). After losing the contest according to the agreed-upon written rules, Mr. Zeidman filed an arbitration demand. Add. 1, App. 7, R. Doc. 45, at 1.

A three-member arbitration panel conducted a hearing and issued a written decision and award. App. 22-44, R. Doc. 2-2, at 2-24. The panel determined, as both parties had agreed, that the terms of the contract (that is, the contest rules) were unambiguous. Add. 24, 26, App. 33, 35, R. Doc. 2-2, at 13 and 15. Even though unambiguous terms are to be given their plain and ordinary meaning, the panel looked to the intent of the parties to determine that the "contestants' task was to prove the data presented to them was not valid data from the November 2020 election." Add. 25, App. 34, R. Doc. 2-2, at 14. The panel invented the concept of "valid data" out of whole cloth.

The panel further concluded that defining data as being simply "about the election" or "relating to the election" would "ignore the Contest rules' references to data "from the election" and "election data." *Id.* The panel rejected Lindell Management's argument that the contract's reference to information "related to" the election should encompass data "about" the election, according to the ordinary and plain meaning of the term "related to." *Id.* The panel explained that, considering the intent of the parties, it would be "unreasonable" to conclude that data about the election in a more general sense (such as "[n]ewspaper articles or broadcast news

about the election transmitted as data over the internet") could qualify as "election data," because, in the panel's view, "if such data qualified, the Contest would not really be a contest at all." Add. 26, App. 35, R. Doc. 2-2, at 15. The panel thus ignored the plain meaning of the contractual requirement that contestants prove that the provided data "does not reflect information related to the November 2020 election." Add. 14, App. 46, Rules, R. Doc. 2-1, at 2.

In addition, despite concluding that the contract was unambiguous, the panel went beyond the plain language of the contract and considered extrinsic evidence to narrow further the meaning of "information related to the … election." *Id.* Specifically, the panel relied on statements made by Mr. Lindell and a Lindell Management expert witness, Dr. Douglas Frank, to conclude that "if the data is not PCAP data, it is not from the election, and it therefore cannot be 'related to the November 2020 election.'" Add. 25, App. 34, R. Doc. 2-2, at 14 and n.2.  In other words, despite the absence of any supporting language in the contract, the panel concluded that a participant could win the contest simply by showing that the data provided was not packet capture data.

The panel then concluded that Mr. Zeidman had proven that each file provided by Lindell Management did not include packet capture data and, therefore, under the panel's invented rule, could not possibly reflect information related to the November 2020 election. App. 36-43, R. Doc. 2-2, at 16-23. The panel thus determined that Mr.

Zeidman was entitled to the $5 million reward. App. 43, R. Doc. 2-2, at 23.

Lindell Management filed a motion in state court to vacate the arbitration award. *See* Add. 5, App. 11, R. Doc. 45, at 5. Mr. Zeidman filed an action in the District Court to confirm the arbitration award. *See* Petition, R. Doc. 1. The state action was removed to federal court and then consolidated with Mr. Zeidman's action. App. 60-63, R. Doc 16, at 1-4.

The District Court heard Mr. Zeidman's motion to confirm the arbitration award and Lindell Management's motion to vacate the arbitration award simultaneously. *See* Text-Only Minute Entry, App. 5, R. Doc. 44. Lindell Management urged the District Court to vacate the arbitration award on the grounds that the arbitration panel had acted outside the scope of its authority by modifying the contest rules. Add. 6, App. 12, R. Doc. 45, at 6. The District Court concluded that although the panel committed a "potentially serious legal error," Add. 10, App. 16, R. Doc. 45 at 10, the award "conforms with [the panel's] authority to interpret the contract." Add. 11, App. 17, R. Doc. 45, at 11. The District Court, however, failed to consider the fact that, as discussed herein below, the panel abandoned its role as contractual interpreter when the panel looked outside the contract and imposed a new obligation on Lindell Management that contradicts the contract's unambiguous terms. The District Court granted Mr. Zeidman's motion to confirm the arbitration award and denied Lindell Management's motion to vacate the arbitration award. Add. 12, App.

18, R. Doc. 45, at 12. Lindell Management then timely filed its Notice of Appeal. App. 20, R. Doc. 51, at 1.

## SUMMARY OF THE ARGUMENT

The deference that federal courts give to arbitration awards is not unlimited. Section 10(a)(4) of the Federal Arbitration Act provides that a federal court has the power to vacate an arbitration award on the basis that the arbitrators "exceeded their powers." 9 U.S.C. § 10(a)(4). In the instant matter, the arbitration panel exceeded its powers by modifying and disregarding the plain meaning of the terms of the parties' contract, which terms the panel expressly determined to be unambiguous. Consequently, the District Court erred as a matter of law when it confirmed the award. More specifically, the District Court's confirmation of the award constitutes error for three reasons:

*First*, the panel went beyond the role of contractual interpreter and imposed a new obligation on Lindell Management when it concluded that Mr. Zeidman could win the contest by showing that the computer files at issue did not contain "packet capture" (also known as "PCAP") data. The panel expressly admitted that the terms of the contract are unambiguous, and yet the panel looked to extrinsic evidence, including statements made by Michael Lindell prior to the contest, to craft this new contest rule. According to the plain language of the unambiguous contract terms, Lindell Management's bargained-for contractual obligation was to pay the $5 million

prize only in the event a contestant proved that the data at issue were not "reflective of information related to the November 2020 election." That directly conflicts with the panel's invented rule, which imposed an additional obligation on Lindell Management to pay out the $5 million prize in the event a contestant proved that the data at issue were not in PCAP format, *regardless whether the data were shown to be unrelated to the election*. Because the panel imposed an obligation on Lindell Management that contradicts the plain language of the contract and is based on sources outside the contract, the panel impermissibly amended the contract and exceeded its authority.

*Second*, the panel altered the burden of proof set by the unambiguous terms of the contract. The panel's conclusion that data in PCAP format cannot constitute data from the election is logically flawed, because PCAP data can be converted into other formats after it is captured from the internet. Accordingly, evidence that the data files did not contain PCAP-formatted data is not probative of whether the data at issue reflects November 2020 election data. At most, it arguably casts a minimal level of doubt on the data's source. The unambiguous terms of the contract, however, provided that a contestant could only win by making the required showing "unequivocally" and "to a 100% degree of certainty." In issuing the award to Mr. Zeidman based on his showing that the data files did not contain PCAP data, the panel thus modified the unambiguous terms regarding the required burden of proof, impermissibly amending the contract and exceeding the panel's authority.

*Third*, when the panel narrowed the focus of the contest to data from the actual election process, allowing a contestant to win by showing that the data files at issue did not themselves constitute such data, the panel directly contradicted the plain meaning of unambiguous contract terms. Specifically, by basing the award to Mr. Zeidman on Mr. Zeidman's purported showing that the data files did not contain data from the actual election process, the panel's award disregarded and contradicted the contract's clear terms providing that a contestant may only win by showing that the data files did not "relate to the November 2020 election." Once more, the panel thus impermissibly amended the contract. In addition, by the panel's own admission, the panel narrowed the contest focus on the basis of the panel's view that doing so was necessary to ensure that the contest would be reasonable and winnable. The fact that the panel relied on its own views about justice and fair play in order to narrow the contest's focus and issue the award to Mr. Zeidman strengthens the conclusion that the panel acted in excess of its authority.

Each of the foregoing reasons is an independently sufficient basis for reversing the District Court's denial of Lindell Management's motion to vacate the award and its grant of Mr. Zeidman's motion to confirm the award. Appellant thus respectfully requests that this Court reverse the District Court and remand this matter to the District Court with instructions to enter an order vacating the award.

## ARGUMENT

### I.     Standard of Review

This appeal centers on the District Court's legal conclusion that the arbitration panel did not exceed its authority. The underlying facts in this matter are not in dispute. When reviewing a district court order confirming or vacating an arbitration award, questions of law are reviewed de novo. *Stark v. Sandberg, Phoenix & von Gontard, P.C.,* 381 F.3d 793, 798 (8th Cir. 2004) (citing *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 947-48 (1995); *Titan Wheel Corp. of Iowa v. Local 2048, Int'l Ass'n of Machinists & Aerospace Workers,* 253 F.3d 1118, 1119 (8th Cir. 2001)).

### II.    The District Court's Determination That the Arbitration Panel Did Not Act Outside the Scope of Its Authority in Issuing the Award Constitutes Legal Error and Warrants Reversal.

Section 10(a)(4) of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, gives federal courts the power to vacate an arbitration award "where the arbitrators exceeded their powers. . .." While the "strong federal policy favoring arbitration" restricts judicial review of arbitration awards, the "arbitrator's authority . . . is not unlimited." *Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184, 187 (8th Cir. 1988). An award should be vacated when the arbitrator "strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice'. . .." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671–72 (2010) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)).

In the instant matter, the arbitration panel was called upon to apply specific, written contest rules to determine whether Mr. Zeidman, a contest participant who had agreed to those rules (including the rules' arbitration clause) in advance of submitting his entry and in writing, was entitled to the $5 million prize for winning the contest.

The arbitration panel strayed from interpretation and application of the contract at issue, and thus exceeded its authority, in three ways. First, the panel relied on sources outside of the contract to impose a new obligation on Lindell Management when it determined that a contestant could win by showing that the data files provided by Lindell Management did not contain data in packet-capture format. Second, the panel altered the burden of proof established by unambiguous terms of the contest rules, modifying and amending the parties' contract. Third, the panel ignored unambiguous contract language, effectively striking it from the contract, when it determined that a contestant could win by showing that the files provided by Lindell Management did not contain data from the 2020 election process. For each of these reasons, the arbitrators "exceeded their powers" pursuant to Section 10(a)(4) of the FAA. 9 U.S.C. § 10(a)(4). Consequently, the District Court erred as a matter of law when it denied Lindell Management's motion to vacate the arbitration award and granted Mr. Zeidman's motion to confirm the arbitration award. Add. 12, App. 18, R. Doc. 45, at 12.

### A.    The Panel Exceeded Its Authority by Imposing a New Obligation on Lindell Management That Lacks a Basis in the Contract.

The contest rules state that, in order to win the contest, participants must "prove that the data Lindell [Management] provides . . . unequivocally does not reflect information related to the November 2020 election." Add. 15, App. 47, R. Doc. 2-1, at 2. The contest rules later repeat the requirement using roughly equivalent language, stating that the contest judges will determine whether each contestant's submission "proves to a 100% degree of certainty that the data shown at the Symposium is not reflective of November 2020 election data." *Id.*

The parties agreed, and the panel specifically determined, that the contract terms were unambiguous. Add. 26, App. 35, R. Doc. 2-2 at 15. Those unambiguous terms created a well-defined, conditional contractual obligation for Lindell Management. Namely, considering the plain and ordinary meaning of the unambiguous terms alone, Lindell Management would have a contractual obligation to pay out prize money totaling $5 million in the event that one or more contestants were to prove, unequivocally, that the data at issue were neither "related to" the November 2020 election nor "reflective of" November 2020 election data.

However, instead of applying the plain meaning of the relevant terms, the panel turned to extrinsic evidence to craft what amounted to a new contest rule: "[I]f the data [provided to contestants by Lindell Management] is not PCAP [packet capture]

14

data, it is not from the election, and it therefore cannot be 'related to the November 2020 election.'" Add. 25, App. 34, R. Doc. 2-2, at 14.

There is no reference in the contest rules to anything about PCAP data or the format of the data files provided to contestants by Lindell Management. To invent its new rule, the panel relied entirely on sources outside the four corners of the parties' contract. *See* Add. 25, App. 34, R. Doc. 2-2, at 14 and n.2. Specifically, the panel relied on statements made by Mr. Lindell prior to the Cyber Symposium, including a statement in a June 2021 interview where Mr. Lindell said that Lindell Management would "show them these packet captures." App. 25, R. Doc 2-2, at 5. In addition, the panel relied on statements made by "cyber expert" and contest judge Dr. Douglas Frank. The panel observed that Dr. Frank had explained: "[E]verything on the internet is in packets. So when you capture it, it's a packet capture." Add. 19, App. 28, R. Doc. 2-2, at 8. The panel also relied on statements made by members of the team of software professionals assembled by Lindell Management to review the data that would be presented to contestants, who said that they expected to be provided with packet-capture data, Add. 18, App. 27, R. Doc. 2-2, at 7, as well as Lindell Management expert witness Douglas Gould, who also "expected to see packet captures." Add. 20, App. 29, R. Doc. 2-2, at 9.

In fashioning its new rule, the panel created a new obligation found nowhere in the contract and imposed it on Lindell Management. No longer would Lindell

Management's obligation to pay out prize money be solely contingent on whether a contestant could demonstrate that the data provided by Lindell Management were not "related to" the November 2020 election. The panel's invented rule meant that Lindell Management would *also* be obligated to pay the $5 million prize in the event a contestant was able to prove that the files provided by Lindell Management did not contain PCAP data, regardless whether the contestant made any showing at all about the data's relationship to the November 2020 election. The panel's invented rule was the basis of the panel's award to Mr. Zeidman: Mr. Zeidman merely demonstrated that the data files provided by Lindell Management did not contain PCAP data and did not attempt to demonstrate that the relevant data contained in the files were not related to the November 2020 election. App. 36-43, R. Doc 2-2, at 16-23.

The District Court concluded that the panel's use of extrinsic evidence in the face of unambiguous contract terms to determine that Mr. Zeidman could win the contest by merely showing that the files did not contain PCAP data, though a "potentially serious legal error," did not warrant vacating the award because the panel was attempting to interpret and apply the contract. Add. 10, App. 16, R. Doc. 45, at 10. This conclusion constitutes reversible error. While arbitrators are free to "construe *ambiguous* contract language," arbitrators "cannot amend the contract." *Manhattan Coffee Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., Loc. No. 688*, 743 F.2d 621, 623 (8th Cir. 1984) (emphasis added). When an arbitrator

looks to sources outside of the contract to impose a new obligation on a contracting party despite the contract's clear terms, the arbitrator amends the contract and acts without authority. That was the holding in *Keebler Co. v. Milk Drivers & Dairy Employees Union Local No. 471*, 80 F.3d 284 (8th Cir. 1996).

In *Keebler*, snack-food manufacturer Keebler Company sought review of an arbitration award wherein the arbitrator determined that Keebler could not transfer certain accounts from a unionized marketing division of the company to a non-unionized division without first obtaining the union's agreement. *Id.* at 286. The arbitrator concluded that, under the collective bargaining agreement and a side agreement, Keebler was only required to *discuss* proposed transfers of accounts to the non-union workers. *Id.* at 287. Even though the arbitrator stated that the terms of the agreements were clear, the arbitrator looked beyond the agreements to a settlement letter as well as past practice to impose an obligation on Keebler to obtain Union *agreement* before transferring accounts to non-union workers. *Id.* at 288. The court reasoned that, because the arbitrator found that the terms of the contracts at issue were clear, "the arbitrator was not construing an ambiguous contract term, but rather was imposing a new obligation upon Keebler thereby amending the collective bargaining agreement and the side agreement." *Id.* Consequently, the court concluded that "the award…must be vacated because the arbitrator's award does not draw its essence from the collective bargaining agreement or the side agreement." *Id.* at 289.

This Circuit reversed the district court's order confirming the award and remanded to the district court to enter an order vacating the award. *Id.*

Like the arbitrator in *Keebler*, the panel in the instant matter concluded that the language of the contract was not ambiguous but then proceeded to examine extrinsic evidence to impose a new obligation on a contractual party. Just as in *Keebler*, the obligation imposed by the arbitrator—that Lindell Management must pay out the prize money in the event a contestant shows that the data files at issue were not in PCAP format—has no basis in the text of the contract. Indeed, the contest rules do not address the format of the data at all, nor do they refer to PCAP or packet capture data. Moreover, as was the case in *Keebler*, the panel expressly admitted that the contract terms were not ambiguous. Nonetheless, it proceeded to examine extrinsic evidence to create and impose the new obligation. Accordingly, applying the Court's reasoning in *Keebler*, the panel's imposition of the requirement that Lindell Management pay the prize money based merely on a showing that the data at issue did not contain packet captures was not an exercise in contract interpretation. It was an amendment to the contract. The arbitrators did not merely "misinterpret[] the contract"; instead, they "abandoned their interpretive role." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 571 (2013).

Because the panel in this case imposed a new obligation on Lindell Management that has no basis in the language of the parties' contract, the terms of

which the panel admitted were not ambiguous, the panel's award does not "draw its essence from the contract[.]" *E. Associated Coal Corp. v. United Mine Workers of Am., Dist. 17*, 531 U.S. 57, 62 (2000) (quoting *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). The District Court thus erred when it denied Lindell Management's motion to vacate the award and granted Mr. Zeidman's motion to confirm the award. *See* 9 U.S.C. 10(a)(4) (federal courts may vacate arbitration awards "where the arbitrators exceeded their powers. . ..").

### B. The Panel Exceeded Its Authority When It Modified the Burden of Proof Established by the Unambiguous Terms of the Contract.

An arbitrator's power to interpret and apply an agreement is broad, but it is also subject to a clear limit. Namely, "the arbitrator…may not disregard or modify unambiguous contract provisions." *Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 855 (8th Cir. 2001) (citations and internal quotation marks omitted); *see also Northwest Airlines, Inc. v. International Ass'n of Machinist & Aerospace Workers, Air Transp. Dist. Lodge #143*, 894 F.2d 998 (8th Cir. 1990) (affirming district court decision vacating arbitration award requiring employer to reinstate employee when, according to the unambiguous language of contract, the employee was deemed to have voluntarily resigned). Moreover, "if the arbitrator interprets unambiguous language in any way *different from its plain meaning*, he amends or alters the agreement and acts without authority." *Inter-City Gas Corp.*, 845 F.2d at 187 (emphasis added) (citations omitted). When an arbitration award is based on an action of an arbitrator that

19

exceeds the arbitrator's authority, a federal court reviewing the award should vacate it. 9 U.S.C. § 10(a)(4).

In the instant matter, the arbitration panel ignored the unambiguous terms of the contest rules, which provide that, in order to win, a contestant must prove that the data provided by Lindell Management is not related to the November 2020 election (or reflective of November 2020 election data) "unequivocally" and "to a 100% degree of certainty." Add. 15-16, App. 46-47, R. Doc. 2-1, at 2-3.

As previously discussed, the panel concluded, based on extrinsic evidence that has no connection to the intent of the parties as expressed in the language of the contract, that if data are not in PCAP format, the data cannot be data captured from the election process, and thus cannot reflect information related to the November 2020 election. Add. 25, App. 34, R. Doc. 2-2, at 14. The panel, citing statements that Mr. Lindell made prior to the Cyber Symposium as well as expert testimony, reasoned that data captured from the internet would be expected to be in PCAP format, and thus, if the data provided to contestants was not in PCAP format, then it must not have been captured from the internet during the election process. App. 24-29, 34 and n.2, R. Doc. 2-2, at 4-9, 14 and n.2.

The panel's conclusion, however, is wholly illogical. As Mr. Zeidman himself testified (and the panel acknowledged), "election data could be in another form than PCAP data." Add. 25, App. 34, R. Doc. 2-2, at 14 n.2. The panel's conclusion also

ignores the fact that data that were transported across the internet and saved as "packet captures" can later be reformatted into a different, desired format. Indeed, the District Court questioned the logic of the panel's conclusion, stating that "the Court finds it to be quite a leap that the only possible data that could constitute 'election data' would be packet capture data."[2] Add. 9, App. 15, R. Doc. 45, at 9.

Not only, as discussed above in Section II.A, does the panel's conclusion constitute a new contest rule that imposes an obligation on a contractual party without any basis in the contract, but it also ignores the plain meaning of unambiguous contract provisions—namely, the provisions requiring contestants to make the required proof "to a 100% degree of certainty" and "unequivocally." Add. 15, App. 47, R. Doc. 2-1, at 2. A showing that the data provided by Lindell Management were not PCAP data may, at best, cast some level of doubt about whether the data constitute actual election data captured as the data transited the internet. But raising doubt about the source of the data is not at all the same thing as

---

[2] This Circuit has held that, beyond the grounds provided by the FAA, an arbitration award may be vacated when it is "completely irrational or evidences a manifest disregard for the law." *Hoffman v. Cargill Inc.*, 236 F.3d 458, 461 (8th Cir. 2001) (citations and internal quotation marks omitted). An award may be "said to be irrational where it fails to draw its essence from the agreement. . . ." *Id.* Because the panel's conclusion—that the only type of data that could constitute "election data" would be packet-capture data—defies logic and has no basis in the contract, the panel's award, which relied on that conclusion, is completely irrational. This is another basis for reversing the District Court and vacating the award.

proving "unequivocally" and "to a 100% degree of certainty" that the data are not related to the November 2020 election or reflective of November 2020 election data. The panel thus significantly lowered the burden of proof set by the unambiguous terms "unequivocally" and "to a 100% degree of certainty," effectively striking the agreed-upon burden of proof from the contract in favor of an entirely different and conflicting standard. In so doing, the panel "alter[ed] the agreement and act[ed] without authority." *Inter-City Gas Corp.*, 845 F.2d at 187 (citations omitted); *see also Omaha Tribe of Nebraska*, 267 F.3d at 855 (holding that arbitrator rewrote contract and exceeded her authority when arbitrator determined that award must be satisfied from tribe's profits from casino on lands in Iowa, disregarding unambiguous language of agreement restricting location to a Nebraska county). Consequently, the District Court erred as a matter of law when it refused to vacate the award.

### C. The Panel Exceeded Its Authority by Focusing the Contest on Election Process Data, Ignoring Unambiguous Contract Terms.

The panel acted beyond the scope of its powers in another way: it restricted the focus of the contest to data transmitted across the internet in the process of counting and tallying votes during the November 2020 election. This is a third, independently sufficient reason justifying reversal of the District Court's order denying Lindell Management's motion to vacate the award.

The panel expressly determined that the "contestants' task was to prove the data presented to them was not valid data from the November 2020 election." Add.

25, App. 34, R. Doc. 2-2, at 14. The panel reasoned that the contract's references to data "from the election" and "election data" "require [that] the data not merely be about the election," but rather that it "be from the election process itself." *Id.* The panel further explained that, in its view, it would be "unreasonable" to conclude that data about the election in a more general sense (such as "[n]ewspaper articles or broadcast news about the election transmitted as data over the internet") could qualify as "election data" for purposes of the contest because "if such data qualified, the Contest would not really be a contest at all." Add. 26, App. 35, R. Doc. 2-2 at 15.

In short, the panel imposed a requirement on Lindell Management to pay out the $5 million prize if one or more contestants were able to demonstrate (according to the panel's modified, lower burden of proof) that the data provided by Lindell Management to the contestants was not data transmitted across the internet in the process of recording and tallying votes in the November 2020 election.

But that requirement contradicts unambiguous contract provisions. Specifically, by focusing the contest on data from the election process itself, the panel disregarded unambiguous terms of the contest rules requiring contestants to prove that the data provided by Lindell Management did not "reflect information *related to* the November 2020 election" and was not "*reflective of* November 2020 election data." Add. 14-15, App. 46-47, R. Doc. 2-1, at 2-3 (emphasis added).

As the District Court correctly observed, the parties and the panel agreed that the contest rules are unambiguous. Add. 7, App. 13, R. Doc. 45, at 7. When, as here, the terms of a contract are unambiguous, the intent of the parties may only be determined by looking at "the language of the written contract alone." *Minnesota Vikings Football Stadium, LLC v. Wells Fargo Bank, Nat'l Ass'n*, 193 F.Supp.3d 1002, 1011 (D. Minn 2016) (citation omitted). Unambiguous terms like those at issue here must be given their plain and ordinary meaning. *Minneapolis Pub. Hous. Auth. V. Lor*, 591 N.W.2d 700, 704 (Minn. 1999).

In plain and ordinary usage, the term "related" means "connected by reason of an established or discoverable relation." "Refined," Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/related (last visited May 6, 2024). The ordinary meaning of the term "reflective of," as used in the parties' contract, is similar. "Reflective," in the relevant sense, means "reflecting something," as in "indicative." "Reflective," Merriam-Webster.com Dictionary, available at https://www.merriam-webster.com/dictionary/reflective (last visited May 6, 2024). Accordingly, the intent of the parties, as expressed in the unambiguous terms of the contract, was that Lindell Management should only have to pay out prize money in the event a contestant could prove that the data at issue was not indicative of or connected to the November 2020 election. That is a very high bar, and it is very different from (and utterly incompatible with) the panel's requirement that Lindell

24

Management pay prize money to any contestant who merely proves that the data at issue was not data from the actual election process. Because the panel "interpret[ed] unambiguous language in a[] way different from its plain meaning, [the panel] amend[ed] . . . the agreement and act[ed] without authority." *Inter-City Gas* Corp., 845 F.Supp. 187 (quoting *District No. 72 & Local Lodge 1127, Int'l Assoc. of Mach. & Aerospace Workers v. Teter Tool & Die, Inc.*, 630 F. Supp. 732, 736 (N.D. Ind. 1986)).

Moreover, the fact that the panel believed that it was necessary to focus the contest on data from the actual election process in order to ensure that the contest was not "unreasonable" or unwinnable does not alter the conclusion that the panel impermissibly amended the parties' contract. On the contrary, this fact makes it clear that "the arbitrat[ion] [panel] based [its] decision on some body of thought, or feeling, or policy, or law that is outside the contract." *CenterPoint Energy Res. Corp. v. Gas Workers Union*, 920 F.3d 1163, 1167 (8th Cir. 2019) (citation and internal quotation marks omitted). The panel's admission that it relied on its own views of justice and fair play to narrow the focus of the contest strengthens the conclusion that the panel strayed from its role of interpreting the contract and took on the role of modifying contractual terms, thereby exceeding its powers. *See Stolt-Nielsen S.A.*, 559 U.S. at 672 (vacating arbitration panel's decision approving class proceedings when arbitration panel "simply … impose[d] its own view of sound policy… ."). Accordingly, the District Court erred as a matter of law when it refused to vacate the arbitration award.

# CONCLUSION

For all the foregoing reasons, Appellant respectfully requests that the Court reverse the District Court's denial of Lindell Management's motion to vacate the arbitration award, reverse the District Court's grant of Mr. Zeidman's motion to confirm the arbitration award, and remand this matter to the District Court with instructions to enter an order vacating the arbitration award.

Dated this 14th day of May 2024.

Respectfully submitted,

/s/ Douglas G. Wardlow
Douglas G. Wardlow (No. 12-0282, MN 339544)
1550 Audubon Road
Chaska, Minnesota 55318
(952) 826-8658
doug@lindellmanagement.com

Thomas F. Miller (No. 89-829, MN 73477)
Thomas F. Miller, P.A.
1000 Superior Blvd., Ste. 303
Wayzata, Minnesota 55391
(612) 991-5992
thomas@millerlaw.com

*Counsel for Respondent-Appellant*
*Lindell Management LLC*

# CERTIFICATE OF COMPLIANCE

1.      This document complies with the type-volume limit of Fed. R. App. P. 32 (a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,578 words.

2.      This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

3.      Pursuant to 8th Cir. R. 28A(h), this brief has been converted into PDF format, and the undersigned certifies that this brief has been scanned for viruses and is virus-free.

Dated: May 14, 2024

/s/Douglas G. Wardlow
Douglas G. Wardlow
*Counsel for Respondent-Appellant*
*Lindell Management, LLC*

## CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on May 14, 2024, the foregoing Brief of Appellant Lindell Management LLC was electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

Dated: May 14, 2024

/s/ Douglas G. Wardlow
*Counsel for Respondent-Appellant*
*Lindell Management LLC*