No. 24-1608

# IN THE UNITED STATES COURT OF APPEALS FOR THE EIGHTH CIRCUIT

R OBERT Z EIDMAN,

*Petitioner-Appellee,*

v.

L INDELL M ANAGEMENT LLC,

*Respondent-Appellant.*

On Appeal from the United States District Court
for the District of Minnesota
Civil Case No. 0:23-cv-01433 (Honorable John R. Tunheim)

## R EPLY B RIEF OF A PPELLANT L INDELL M ANAGEMENT LLC

Douglas G. Wardlow
1550 Audubon Road
Chaska, Minnesota 55318
(952) 826-8658
doug@lindellmanagement.com

Thomas F. Miller
Thomas F. Miller, P.A.
1000 Superior Blvd., Ste. 303
Wayzata, Minnesota 55391
(612) 991-5992
thomas@millerlaw.com

*Counsel for Respondent-Appellant Lindell Management LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................... ii

ARGUMENT ........................................................................................................... 1

    I.   Introduction.....................................................................................1

    II.  The Arbitration Award Should Be Vacated Pursuant to
        Section 10(a)(4) of the FAA Because the Arbitration Panel
        Exceeded Its Powers......................................................................2

    III. The Arbitration Award Is Not Based on an Interpretation
        or Application of the Contract. .....................................................8

CONCLUSION ...................................................................................................... 10

CERTIFICATE OF COMPLIANCE .................................................................... 11

CERTIFICATE OF SERVICE .............................................................................. 12

# TABLE OF AUTHORITIES

**CASES**

*Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57 (2000) ...................................... 3

*George A. Hormel & Co. v. United Food & Com. Workers, Loc. 9,
AFL-CIO*, 879 F.2d 347 (8th Cir. 1989) ........................................................................ 5

*Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184 (8th Cir. 1988) ............................ 6

*Keebler Co. v. Milk Drivers & Dairy Employees Union Local No. 471*,
80 F.3d 284 (8th Cir. 1996) ............................................................................................ 5

*Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*,
267 F.3d 848 (8th Cir. 2001) .......................................................................................... 6

*Oxford Health Plans LLC v. Sutter*, 569 U.S. 564 (2013) ..........................................2, 3, 5, 9

*Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960) ...................................... 8

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662 (2010) ...............................2, 3, 8

**STATUTES**

9 U.S.C. § 1 *et seq.*................................................................................................................. 2

9 U.S.C. § 10(a)(4)..................................................................................................1, 3, 8, 9

# ARGUMENT

## I. Introduction.

Appellee Robert Zeidman ("Zeidman") claims that Appellant Lindell Management LLC ("Lindell Management") has failed to raise any recognized basis that would authorize reversing the District Court's confirmation of the arbitration award, insisting that the award is based on the arbitration panel's interpretation of the contest rules that constitute the parties' contract. In fact, however, the arbitration panel's written decision reveals that the panel did not base the award on an interpretation of the contract, but rather issued the award based on extra-contractual statements and the panel's own ideas about what is reasonable and fair. Indeed, to issue the award to Zeidman, the panel altered the very nature of the contest, inventing a new rule that has no basis in the contract and changing the contract's conditions for winning in a manner that contradicts the contract's unambiguous terms. Because the panel strayed from its duty to interpret the contract and issued an award that is not based on the contract, the arbitrators "exceeded their powers" and the award should be vacated under Section 10(a)(4) of the Federal Arbitration Act. 9 U.S.C. § 10(a)(4). The District Court erred when it denied Lindell Management's motion to vacate the award, and the judgment below should be reversed.

1

## II. The Arbitration Award Should Be Vacated Pursuant to Section 10(a)(4) of the FAA Because the Arbitration Panel Exceeded Its Powers.

Zeidman asserts that Lindell Management's argument that "the Panel exceeded its authority to interpret the parties' contract" is "foreclosed" because "there is no dispute that the Panel analyzed the applicable contract and relied upon that contract in awarding Zeidman $5 million." Brief of Appellee ("Appellee Br.") at 10. Zeidman is flatly incorrect. The arbitration panel's written decision makes it abundantly clear that the panel *did not* rely upon the contract to render its award. This fact is fatal to Zeidman's argument.

Section 10(a)(4) of the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, gives federal courts the power to vacate an arbitration award "where the arbitrators exceeded their powers… ." 9 U.S.C. § 10(a)(4). An "arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator exceeded [his] powers" when the arbitrator "strays from interpretation and application of the agreement and effectively dispense[s] his own brand of industrial justice… ." *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 671-72 (2010) (citation and quotation marks omitted) (brackets in original); *see also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 569 (2013) (stating that a court may overturn an arbitration award under Section 10(a)(4) of the FAA "if the arbitrator act[s] outside the scope of his contractually delegated authority—issuing an award that simply reflect[s] [his] own notions of [economic] justice rather than draw[ing] its essence from the contract… .")

2

(citations and quotation marks omitted) (brackets in original). Arbitrators that stray from interpretation and application of the parties' contract "exceed their powers," 9 U.S.C. § 10(a)(4), because "the task of an arbitrator is to interpret and enforce a contract, not to make public policy," *Stolt-Nielsen S.A.*, 559 U.S. at 672.

Accordingly, while an arbitration decision "'even arguably construing or applying the contract' must stand," *Sutter*, 569 U.S. at 569 (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)), the opposite is also true: an arbitration decision that does not construe or apply the contract must not stand and should be vacated under Section 10(a)(4) of the FAA, 9 U.S.C. § 10(a)(4). *See, e.g.*, *Stolt-Nielsen S.A.*, 559 U.S. at 672.

In this case, the arbitration panel did not construe or apply the contract to render the award. On the contrary, the panel relied on extra-contractual statements to create a new obligation that has no basis in the contract, and the panel then imposed that obligation on Lindell Management in the form of the award.

The terms of the contract—terms that the panel itself expressly determined to be unambiguous, *see* Appellant's Addendum ("Add.") 26, Appellant's Appendix ("App.") 35, R. Doc. 2-2, at 15—obligated Lindell Management to pay out the prize money only in the event that a contest participant demonstrated "unequivocally" that the data files at issue in the contest did not "reflect information related to the November 2020 election." Add. 15, App. 47, R. Doc. 2-1, at 2. The panel, relying not

3

on any language in the parties' contract, but rather on extra-contractual statements made by Lindell Management's CEO and strangers to the contract, *see* Add. 25, App. 34, R. Doc. 2-2, at 14 and n.2, invented a new contest rule: "[I]f the data [at issue] is not PCAP [packet capture] data, it is not from the election, and it therefore cannot be 'related to the November 2020 election.'" Add. 25, App. 34, R. Doc. 2-2, at 14.

In so doing, the panel created a new means of winning the contest that did not require a contestant to show that the data files at issue did not relate to the November 2020 election. Under the panel's invented rule, a contestant could also win by merely showing that the files at issue did not contain data formatted in a particular way (*i.e.*, in PCAP format), thus imposing an obligation on Lindell Management to pay out the $5 million prize money under a condition never mentioned in the contract nor contemplated by the parties. This invented, extra-contractual rule was the central basis for the panel's award to Zeidman. *See* App. 36-43, R. Doc. 2-2, at 16-23.

The panel's creation of the data-format rule that formed the basis for the award was not an interpretation or application of the contract. In its written decision, the panel makes it clear that the panel relied entirely on extra-contractual statements to create the rule. Add. 25, App. 34, R. Doc. 2-2, at 14 and n.2. Those statements are not extrinsic evidence of the meaning of any contractual terms. Nothing in the contract even arguably requires the contest judges to consider the format of the data. Indeed,

4

the contract makes no reference to the format of the data whatsoever, let alone to the terms "PCAP" or "packet capture."

There can thus be no dispute that when the panel imposed its data-format rule and rendered the award on that basis, the panel "was not construing an ambiguous contract term, but rather was imposing a new obligation" on Lindell Management, "thereby amending the…agreement" and exceeding its powers. *Keebler Co. v. Milk Drivers & Dairy Employees Union Local No. 471*, 80 F.3d 284, 288 (8th Cir. 1996) (vacating labor-arbitration award when arbitrator looked to evidence outside the contract to impose obligation on employer to obtain union approval for transferring work to non-union employees despite contract term requiring discussion of such transfers with the union). The panel did not merely "misinterpret[] the contract"; on the contrary, the arbitrators "abandoned their interpretive role." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 571 (2013); *see also George A. Hormel & Co. v. United Food & Com. Workers, Loc. 9, AFL-CIO*, 879 F.2d 347, 352 (8th Cir. 1989) (vacating award because it "did not draw its essence from an interpretation of explicit provisions of the contract"). Consequently, the panel "exceeded its powers," 9 U.S.C. § 10(a)(4), and the District Court erred when it refused to vacate the award.

In addition to imposing the extra-contractual data-format rule, the panel abandoned its role as contractual interpreter and exceeded its powers in two other ways. *See* Appellant's Opening Brief at 19-25. First, the panel altered the burden of

proof set by the unambiguous terms of the contract. The terms of the contract provide that, to win, a contestant must prove that the data at issue do not relate to the November 2020 election "unequivocally" and "to a 100% degree of certainty." Add. 15-16, App. 46-47, R. Doc. 2-1, at 2-3. As previously discussed, the panel imposed a rule allowing Zeidman to win by merely showing that the data are not in PCAP format. Besides having no basis in the contact, this rule is wholly illogical. Data initially saved as "packet captures" can be converted into a different format. Indeed, Mr. Zeidman himself testified that "election data could be in another form than PCAP data." Add. 25, App. 34, R. Doc. 2-2, at 14 n.2. Accordingly, a showing that the data are not in PCAP format does not prove "unequivocally" or "to a 100% degree of certainty" that the data are not related to the November 2020 election. In rendering the award, the panel thus amended the contract, effectively deleting the burden of proof set by the contract's unambiguous terms. *See Missouri River Servs., Inc. v. Omaha Tribe of Nebraska*, 267 F.3d 848, 855 (8th Cir. 2001) ("[T]he arbitrator…may not disregard or modify unambiguous contract provisions.") (citations and quotation marks omitted); *Inter-City Gas Corp. v. Boise Cascade Corp.*, 845 F.2d 184, 189 (8th Cir. 1988) (vacating award when arbitrator "exceeded his authority" by "ignor[ing] the plain language of the contract.").

Second, the panel exceeded its powers when, relying on its own notions of fairness and ignoring unambiguous contract terms, it narrowed the focus of the

6

Appellate Case: 24-1608     Page: 9     Date Filed: 06/28/2024 Entry ID: 5408395

contest to election-process data. The contract states that, in order to win the contest, participants must "prove that the data Lindell [Management] provides . . . unequivocally *does not reflect information related to* the November 2020 election." Add. 15, App. 47, R. Doc. 2-1, at 2 (emphasis added). The panel, however, determined that the "contestants' task was to prove the data presented to them was not valid data *from* the November 2020 election," Add. 25, App. 34, R. Doc. 2-2, at 14 (emphasis added), thus making the contest much easier to win. The panel did not require Zeidman to marshal evidence that the data at issue did not "reflect information related to" the election, as required by the contract. Instead, the panel allowed him to win by showing that the data at issue were not "valid" data "from the election process itself." *Id.* (The panel then further assisted Zeidman by inventing the additional, extra-contractual rule that data cannot be "from the election process itself" unless the data are in PCAP format.)

Setting aside the panel's invented rule regarding data format (which is an independently sufficient basis to find that the panel exceeded its powers), the panel's decision to make the contest easier to win by narrowing the focus of the contest to data from the actual election process constitutes an impermissible modification of the contract's unambiguous terms. The panel explained that it would be "unreasonable" to conclude that data about the election in a more general sense (such as "[n]ewspaper articles or broadcast news about the election transmitted as data over the internet")

7

could qualify as "election data" for purposes of the contest. Add. 26, App. 35, R. Doc. 2-2 at 15. In the words of the panel, "if such data qualified, the Contest would not really be a contest at all." *Id.* The panel thus ignored the unambiguous terms of the contract that required contestants to prove that the data at issue did not "reflect information related to" the election and changed the nature of the contest, making it easier to win, on the basis of the panel's own views of what would be reasonable and fair. The panel thus "stray[ed] from interpretation and application of the agreement and effectively dispense[d] [its] own brand of…justice," exceeding its powers. *Stolt-Nielsen S.A.*, 559 U.S. at 671-72 (2010) (quoting *Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960)). Accordingly, the District Court erred when it refused to vacate the award pursuant to Section 10(a)4 of the FAA, 9 U.S.C. § 10(a)(4).

### III. The Arbitration Award Is Not Based on an Interpretation or Application of the Contract.

Zeidman also asserts that "Lindell's argument that the Panel misinterpreted the contract is fatal to its appeal because it concedes that the panel did, in fact, interpret the applicable contract." Appellee Br. at 11. Zeidman's assertion is mere semantics and has no merit.

Lindell Management argues, and the record shows, that the panel did not base the award on an interpretation or application of the contract. As discussed above and in Appellant's opening brief, the panel based its award on a new contest rule that it

8

created not by reference to the meaning of any contractual terms, but instead based on extra-contractual statements that have nothing to do with the intent of the contracting parties. Moreover, the panel changed the entire nature of the contest, altering the contest's burden of proof and changing the core conditions for winning set by the contract's unambiguous terms based on what the panel openly stated are its own notions of what would constitute a reasonable contest.

The panel did not interpret the contract to determine whether Zeidman had won the contest. The panel threw out the contract and created a contest that Zeidman had already won.

Appellee's responsive brief fails to address any of the foregoing substantive arguments, instead relying entirely on the significant deference that federal courts give to arbitration awards. But that deference is not total. When, as here, arbitrators issue an award that reflects their "own notions of [economic] justice rather than draw[ing] its essence from the contract," the arbitrators have exceeded their powers, and the award may be vacated under Section 10(a)(4) of the FAA, 9 U.S.C. § 10(a)(4). *Sutter*, 569 U.S. at 569 (citation and quotation marks omitted) (brackets in original). The District Court's denial of Lindell Management's motion to vacate the award constitutes error and should be reversed.

9

## CONCLUSION

For all the foregoing reasons, Appellant respectfully requests that this Court reverse the judgment below and remand this matter to the District Court with instructions to enter an order vacating the arbitration award.

Dated this 27th day of June 2024.

Respectfully submitted,

*/s/ Douglas G. Wardlow*
Douglas G. Wardlow (No. 12-0282, MN 339544)
1550 Audubon Road
Chaska, Minnesota 55318
(952) 826-8658
doug@lindellmanagement.com

Thomas F. Miller (No. 89-829, MN 73477)
Thomas F. Miller, P.A.
1000 Superior Blvd., Ste. 303
Wayzata, Minnesota 55391
(612) 991-5992
thomas@millerlaw.com

*Counsel for Respondent-Appellant*
*Lindell Management LLC*

10

# CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 2,290 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and (6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

3. Pursuant to 8th Cir. R. 28A(h), this brief has been converted into PDF format, and the undersigned certifies that this brief has been scanned for viruses and is virus-free.

Dated: June 27, 2024

*/s/ Douglas G. Wardlow*
Douglas G. Wardlow
*Counsel for Respondent-Appellant*
*Lindell Management, LLC*

# CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that on June 27, 2024, the foregoing Reply Brief of Appellant Lindell Management LLC was electronically filed with the Clerk of Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

Dated: June 27, 2024

*/s/ Douglas G. Wardlow*
Douglas G. Wardlow
*Counsel for Respondent-Appellant*
*Lindell Management LLC*